FILED

MAR 31 2008

CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARLOS PULIDO,

                Petitioner,

        v.

JOHN F. SALAZAR, Warden, et al.,

                Respondent.

NO. CV 07-5682-DSF(E)

ORDER ADOPTING FINDINGS,

CONCLUSIONS AND RECOMMENDATIONS

OF UNITED STATES MAGISTRATE JUDGE

     Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge.  The Court approves and adopts the Magistrate Judge's Report and Recommendation.

     IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///

///

///

///

1     IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2 the Magistrate Judge's Report and Recommendation and the Judgment

3 herein by United States mail on Petitioner and counsel for Respondent.

4

5     LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7     DATED:    *March 31*    , 2008.

8

9

10                                                      

11                              DALE S. FISCHER
                       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CARLOS PULIDO,                    ) NO. CV 07-5682-DSF(E)
                                        )
12                 Petitioner,          )
                                        )
13        v.                            ) REPORT AND RECOMMENDATION OF
                                        )
14   JOHN F. SALAZAR, Warden,           ) UNITED STATES MAGISTRATE JUDGE
     et al.,                            )
15                                      )
                                        )
16                 Respondent.          )
     _____)

17

18        This Report and Recommendation is submitted to the Honorable

19   Dale S. Fischer, United States District Judge, pursuant to 28 U.S.C.

20   section 636 and General Order 05-07 of the United States District

21   Court for the Central District of California.

22

23                          **PROCEEDINGS**

24

25        On August 30, 2007, Petitioner filed a "Petition for Writ of

26   Habeas Corpus By a Person in State Custody."  On November 1, 2007,

27   Respondent filed a Motion to Dismiss, arguing that the Petition did

28   not even allege a federal question.  On December 26, 2007, the Court

1  denied the Motion to Dismiss, finding that the Petition, as clarified
2  by Petitioner's Opposition to the Motion to Dismiss, alleged federal
3  due process claims as well as state law claims.

4

5      On January 23, 2006, Respondent filed an Answer.  On February 14,
6  2008, Petitioner filed a Reply.

7

8                              **BACKGROUND**

9

10     Petitioner is serving two concurrent indeterminate life sentences
11 for attempted murder and kidnapping for robbery (Lodgments 1, 2).
12 Petitioner and a crime partner grabbed the victim, held knives to the
13 victim, took $15.00 from the victim's pocket, forced the victim into a
14 car, transported the victim, threatened to kill the victim and later
15 chased the victim with their knives as the victim managed to escape
16 and run away (Lodgment 3, pp. 22-25; Lodgment 4, pp. 2-3).

17

18     In 2006, the Board of Parole Hearings ("BPH") found Petitioner
19 unsuitable for parole (Lodgment 3, pp. 59-69).  Petitioner challenged
20 this finding in a habeas corpus petition filed in the Los Angeles
21 Superior Court (Lodgment 5).  The Superior Court denied this petition
22 in a brief order (Lodgment 6).  The California Court of Appeal
23 summarily denied a subsequent habeas petition filed by Petitioner
24 (Lodgment 8).  The California Supreme Court did likewise (Lodgment
25 10).  Petitioner now challenges by federal habeas corpus the BPH's
26 parole unsuitability finding and Petitioner's consequent, continuing
27 incarceration.
28 ///

## STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996; see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 7-8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result. See Early v. Packer, 537 U.S. at 8 (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a

governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).  A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. at 407 (citation omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state court's application must have been 'objectively unreasonable.'" Id. at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).  In applying these standards, this Court looks to the last reasoned state court decision. See Franklin v. Johnson, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).  To the extent no such reasoned opinion exists, as where a state court rejected a claim in an unreasoned order, this Court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

1  **DISCUSSION**

2

3      For the reasons discussed below, the Petition should be denied

4  and dismissed with prejudice.[1]

5

6  **I.   California Prisoners Have a Liberty Interest in Parole.**

7

8      "There is no constitutional or inherent right of a convicted

9  person to be conditionally released before the expiration of a

10 valid sentence."  Greenholtz v. Inmates, 442 U.S. 1, 7 (1979)

11 ("Greenholtz").  In some instances, however, states may confer a

12 liberty interest in parole under state law.  Id. at 12.  For example,

13 where a state statute "uses mandatory language ('shall') to 'create a

14 presumption that parole release will be granted' when the designated

15 findings are made," the statute confers a liberty interest.  Bd. of

16 Pardons v. Allen, 482 U.S. 369, 377-78 (1987) ("Allen") (citing

17 Greenholtz, 442 U.S. at 12); see also Irons v. Carey, 505 F.3d 846

18 (9th Cir. 2007) ("Irons") (discussing same); Sass v. California Bd. of

19 Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass").

20

21     California Penal Code section 3041, which governs the setting of

22 parole dates for California prisoners, provides, in pertinent part:

23

24         The panel or the board . . . shall set a release date unless

25         it determines that the gravity of the current convicted

26  _____

27         [1]    The Court has considered and rejected each of
    Petitioner's arguments.  The Court discusses Petitioner's
28  principal arguments herein.

5

1    offense or offenses, or the timing and gravity of current

2    or past convicted offense or offenses, is such that

3    consideration of the public safety requires a more lengthy

4    period of incarceration for this individual, and that a

5    parole date, therefore, cannot be fixed at this meeting.

6

7    See Cal. Penal Code § 3041(b).  The Ninth Circuit has held that

8    section 3041(b) confers a constitutionally-protected liberty interest

9    in parole.  See Sass, 461 F.3d at 1127; see also Irons, 505 F.3d at

10   850-51; Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003)

11   ("Biggs"); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)

12   ("McQuillion").

13

14   II.   **Due Process Requires that "Some Evidence" Support a Parole**

15         **Decision.**

16

17       Due process requires that there exist "some evidence" to support

18   a parole decision.  Jancsek v. Oregon Board of Parole, 833 F.2d 1389,

19   1390 (9th Cir. 1987) ("Jancsek") (citing Superintendent v. Hill, 472

20   U.S. 445, 457 (1985) ("Hill")).[2]  The denial of parole is justified if

21   _____

22       [2]   Hill concerned the revocation of "good time" credits
     toward parole based on inmate misconduct.  Hill, 472 U.S. at 455.

23   The Supreme Court held that "revocation of good time credit does
     not comport with 'the minimum requirements of procedural due

24   process,' unless the findings of the prison disciplinary board
     are supported by some evidence in the record."  Id. (emphasis

25   added).  Jancsek first applied Hill's "some evidence" standard to
     parole board decisions, reasoning that the decisions in each case

26   "directly affect the duration of the prison term."  Jancsek, 833
     F.2d at 1390; see also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.

27   1994) (applying "some evidence" standard to parole revocation

28                                                    (continued...)

1  "there is any evidence in the record that could support the conclusion

2  reached. . . ."  Sass, 461 F.3d at 1128-29.

3

4      In Sass, the Ninth Circuit held that the "some evidence" standard

5  is "clearly established in the parole context."  Sass, 461 F.3d at

6  1128-29; see also Irons, 505 F.3d at 851.  This Court must follow

7  Sass.  Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987)

8  ("[D]istrict Courts are, of course, bound by the law of their own

9  circuit.").

10

11      There exists an exception to the rule that district courts are

12  bound by the law of their own circuit where an intervening Supreme

13  Court case "undercut[s] the theory or reasoning underlying the prior

14  circuit precedent in such a way that the cases are clearly

15  irreconcilable."  Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir.

16  2003); see also Barapind v. Enomoto, 400 F.3d 744, 751 n.8 (9th Cir.

17  2005) (explaining that the Miller Court announced its rule "to guide

18  three-judge panels and district courts in deciding which precedents

19  were binding on them").  Contrary to Respondent's arguments in the

20  present case, no intervening Supreme Court case is "clearly

21  irreconcilable" with Sass.  Supreme Court cases restating and applying

22  the AEDPA standard of review in various non-parole contexts are not

23  "clearly irreconcilable" with Sass.  To rule otherwise would

24  essentially allow the narrow exception recognized in Miller v. Gammie

25  _____

26      [2](...continued)

27  decisions); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir.
   1992) (applying "some evidence" standard to a decision to rescind
28  a parole date, and noting concurrence with the Eighth and Tenth
   Circuits).

1  to swallow the rule that the exception qualifies.  Supreme Court

2  reversals of Ninth Circuit decisions in disparate contexts do not

3  privilege district courts to ignore Ninth Circuit precedent directly

4  on point.

5

6  **III.  Some Evidence Supports the BPH's Unsuitability Finding.**

7

8       As the Ninth Circuit held in Sass, due process requires that

9  there exist "some evidence" to support a parole decision.  Sass, 461

10 F.3d at 1128.  The denial of parole is justified if "there is any

11 evidence in the record that could support the conclusion reached. . .

12 ."  Id. at 1128-29 (noting that the "some evidence" standard is

13 "minimal"); see also Superintendent v. Hill, 472 U.S. 445, 457

14 (evidence that is "meager" or indirect still may support an agency

15 decision under the "some evidence" standard).  State authorities'

16 discretion in parole matters is "great" and "involves the deliberate

17 assessment of a wide variety of individualized factors on a case-by-

18 case basis, and the striking of a balance between the interests of the

19 inmate and the public."  In re Powell, 45 Cal. 3d 894, 902, 248 Cal.

20 Rptr. 431, 755 P.2d 881 (1988) (internal quotations and citation

21 omitted); see also Biggs, 334 F.3d at 915 (California law allows the

22 state authorities "to consider a myriad of factors when weighing the

23 decision of granting or denying parole"); Glauner v. Miller, 184 F.3d

24 1053, 1055 (9th Cir. 1999) (state authorities have "broad discretion"

25 to determine whether "the necessary [statutory] prerequisites are

26 met") (quoting Board of Pardons v. Allen, 482 U.S. 369, 376 (1987).

27 The "some evidence" standard, which neither requires the Court to

28 examine the entire record nor to weigh the evidence independently,

1   recognizes the great deference afforded to State authorities in

2   determining release dates for prisoners.  See Superintendent v. Hill,

3   472 U.S. 445, 456 (1985).

4

5        Under applicable state regulations, in determining suitability

6   for parole, the BPH may consider, inter alia, "the circumstances of

7   the prisoner's social history; past and present mental state; past

8   criminal history, including involvement in other criminal misconduct

9   which is reliably documented; the base and other commitment offenses,

10  including behavior before, during and after the crime; past and

11  present attitude toward the crime; any conditions of treatment or

12  control, including the use of special conditions under which the

13  prisoner may safely be released to the community; and any other

14  information which bears on the prisoner's suitability for release."

15  See 15 Cal. Code of Regs. § 2402(b).  Circumstances tending to show

16  unsuitability include: (1) a finding that the prisoner committed

17  the commitment offense in an "especially heinous, atrocious or

18  cruel manner"; (2) the prisoner's unstable social history;

19  (3) psychological factors; and (4) institutional behavior.  See

20  15 Cal. Code of Regs. § 2402(c).  In determining whether the

21  circumstances surrounding the commitment offense militate against a

22  suitability finding, the BPH may consider whether the offense was

23  "carried out in a manner which demonstrates an exceptionally callous

24  disregard for human suffering," and whether the motive for the crime

25  "is inexplicable. . . ."  See 15 Cal. Code of Regs. §§ 2402(c)(1)(D),

26  (E).  Circumstances tending to favor a finding of suitability include

27  a finding that the prisoner has made "realistic plans for release or

28  has developed marketable skills that can be put to use upon release."

9

1 | See 15 Cal. Code of Regs. § 2402(d).

2

3 | In finding Petitioner unsuitable for parole, the BPH cited the
4 | particular nature of the crimes (including the terrorizing of the
5 | victim), the trivial motive for the crimes, the lack of current
6 | commitments with respect to parole plans, and Petitioner's poor
7 | disciplinary record in prison (seven serious disciplinary reports
8 | including three for drugs and alcohol and two for violence) (Lodgment
9 | 3, pp. 59-66). These considerations, which are supported by some
10 | evidence in the record, suffice under the applicable standards. See
11 | In re Dannenberg, 34 Cal. 4th 1061, 1095, 23 Cal. Rptr. 3d 417, 440,
12 | 104 P.2d 783, 802, cert. denied, 546 U.S. 844 (2005) (circumstances of
13 | commitment offense can justify denial of parole where there existed
14 | more violence or viciousness than minimally necessary to convict the
15 | person of the offense); Gonzalez v. Mendoza-Powers, 2008 WL 268990 *8
16 | (E.D. Cal. Jan. 30, 2008) (Board properly considered six serious
17 | disciplinary reports, the last one in 1994, in finding the petitioner
18 | unsuitable for parole); Withers v. Finn, 2007 WL 2729078 **6-7 (E.D.
19 | Cal. Sept. 18, 2007), adopted by 2007 WL 3293378 (E.D. Cal. Nov. 5,
20 | 2007) (inadequate parole plans constituted some evidence supporting
21 | finding of parole unsuitability); Terry v. Woodford, 2007 WL 1040965
22 | *6 (E.D. Cal. Apr. 4, 2007), adopted by 2007 WL 1430090 (E.D. Cal.
23 | May 15, 2007) (triviality of motive for crime justified finding of
24 | parole unsuitability); Gutierrez v. Kane, 2007 WL 963243, at *3 (N.D.
25 | Cal. Mar. 29, 2007) (BPT's finding that offense of kidnapping for
26 | robbery was carried out in a "vicious, cruel manner" supported by
27 | evidence that petitioner threatened to kill if he did not receive
28 | money and held a weapon to the head of one or more victims).

1    Petitioner appears to argue that the nature of his commitment
2  offenses alone cannot justify the denial of parole suitability.   In
3  the present case, the BPH relied on more than the nature of the
4  commitment offense.   In any event, the California Supreme Court has
5  held that the circumstances of the commitment offense can constitute
6  an independently sufficient basis for denying parole where, as here,
7  the circumstances involved violence or viciousness "more than
8  minimally necessary to convict [the person] of the offense for which
9  he is confined."   See In re Dannenberg, supra.

10

11    Petitioner appears to argue that the BPH should have deemed
12  Petitioner suitable for parole based on allegedly positive factors.
13  This assertion must be rejected.   This Court cannot re-weigh the
14  factors supporting parole suitability and the factors supporting
15  parole unsuitability.   See Powell v. Gomez, 33 F.3d 39, 42 (9th Cir.
16  1994); McElwee v. Hamlet, 2003 WL 21556945 *3 (N.D. Cal. July 3,
17  2003).   Moreover, even if the BPH made some insupportable findings,
18  the Court nevertheless must deny habeas relief where, as here, there
19  exists "some evidence" supporting the BPH's conclusion of
20  unsuitability.   See Biggs, 334 F.3d at 916.

21

22  **IV.   Petitioner Has Not Shown the BPH Otherwise Denied Petitioner Due**
23        **Process.**

24

25    In addition to requiring that there be "some evidence" to support
26  the BPH's unsuitability determination, due process requires that the
27  state provide a prisoner with an opportunity to be heard and, if
28  parole is denied, a statement of reasons for the denial.   Greenholtz,

442 U.S. at 16; <u>Bermudez v. Duenas</u>, 936 F.2d 1064, 1066 (9th Cir. 1991). Petitioner received these procedural safeguards. To the extent Petitioner asserts the BPH failed to give him individualized consideration, the record belies such assertion. The BPH gave Petitioner individualized consideration, but simply determined that the evidence tending to show unsuitability outweighed the evidence tending to show suitability. Again, it is not for this Court to re-weigh the evidence before the BPH. <u>See</u> <u>Powell v. Gomez</u>, 33 F.3d at 42; <u>McElwee v. Hamlet</u>, 2003 WL 21556945 at *3.

## V.    The Dicta in Biggs Cannot Justify Habeas Relief in the Present Case.

Petitioner cites <u>Biggs</u> in arguing that the BPH erred by relying on the nature of Petitioner's offense. In dicta, the <u>Biggs</u> Court stated:

> <u>Over time</u>, however, <u>should Biggs continue</u> to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct <u>would raise serious questions</u> involving his liberty interest in parole. . . .
>
> . . . A <u>continued</u> reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and <u>could</u> <u>result</u> in a due process violation.

1    Biggs, 334 F.3d at 916-17 (emphasis added).

2

3         As previously indicated, the BPH did not rely solely on the

4    nature of the commitment offense to deny parole in the present case.

5    Moreover, an analysis of Ninth Circuit cases subsequent to Biggs

6    demonstrates that Petitioner's circumstances cannot justify habeas

7    relief under the Biggs dicta.  In Sass, the Ninth Circuit held that

8    the gravity of the commitment offense (second degree murder) and the

9    evidence of Sass' prior offenses demonstrated the requisite "some

10   evidence" to support the BPH's denial of parole.  Sass, 461 F.3d at

11   1129.  Acknowledging the Biggs dicta, the Sass Court indicated

12   nevertheless that it was not the Court's function "to speculate about

13   how future parole hearings should proceed."  Id.

14

15        In Irons, the BPH deemed the petitioner, a second degree

16   murderer, unsuitable for parole despite his exemplary behavior in

17   prison.  On federal habeas, Irons argued, inter alia, that under the

18   Biggs dicta the BPH had violated Due Process by relying repeatedly on

19   the nature of the commitment offense to deny parole.  Relying on Sass,

20   the Ninth Circuit rejected this argument.  Irons, 505 F.3d at 853-54.

21   The Court observed, inter alia, that the crime in Sass was less

22   callous than that in Irons, and that the petitioners in Biggs, Sass

23   and Irons had not served the minimum term to which they had been

24   sentenced at the time of the BPH's denial of parole.  Id.  However,

25   the Court carefully limited its holding to the "particular

26   circumstances" of the offenses in Biggs, Sass and Irons.  Id.  ("All

27   we held in [Biggs and Sass], and all we hold today, . . . is that,

28   given the particular circumstances of the offenses in these cases, due

                                       13

1  process was not violated when these prisoners were deemed unsuitable

2  for parole prior to the expiration of their minimum terms."); see

3  Biggs v. Schwarzenegger, 2007 WL 1140721, at *3 n.2 (E.D. Cal.

4  Apr. 17, 2007) ("Irons did not decide that reliance on unchanging

5  factors after the minimum term had been served was unlawful.   We

6  simply know that 'maybe' that will be the case.").

7

8        The day after the original Ninth Circuit decision in Irons,[3] the

9  Circuit reversed a district court's grant of parole eligibility in

10  Kunkler v. Muntz, 226 F.App'x 669 (9th Cir. 2007) (unpublished

11  opinion).[4]   In that case, after the BPH granted parole at the

12  petitioner's eighth parole hearing, the Governor reversed the

13  decision, citing the gravity of the commitment offense and the

14  petitioner's criminal history.   Id. at *1.   The Superior Court held

15  the BPH could not rely on the petitioner's criminal history to deny

16  parole because there was no evidence that any of the petitioner's

17  prior crimes involved violence.   Id.   On federal habeas review, the

18  district court granted the petition, applying the Biggs dicta.   The

19  Ninth Circuit reversed, holding that there was some evidence to

20  support the BPH's decision, and quoting Sass' admonition that "'it is

21  not [this court's] function to speculate about how future parole

22  hearings could proceed.'"   Id. at *2 (citation omitted; original

23

24        [3]   The original Irons opinion, later amended in respects
25  immaterial to the present proceeding, was filed on March 6, 2007.
    See Irons v. Carey, 479 F.3d 658 (9th Cir. 2007), amended, 505
26  F.3d 846 (July 13, 2007).

27        [4]   The Court may cite unpublished Ninth Circuit opinions
    issued on or after January 1, 2007.   See U.S. Ct. App. 9th Cir.
28  Rule 36-3(b); Fed. R. App. P. 32.1(a).

1  brackets).

2

3      In Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008) ("Hayward"),

4  the Ninth Circuit cited the Biggs dicta and granted habeas relief to a

5  sixty-four-year-old state prisoner who had been incarcerated almost

6  thirty years.  In doing so, however, the Hayward Court expressly

7  confined its ruling to the "unusual" and "extraordinary" circumstances

8  of that case.  Hayward at 546-47.  Those circumstances, emphasized

9  repeatedly by the Hayward Court, included not only Hayward's age and

10 the remoteness of his crime, but also the significant provocation for

11 the crime (the victim had attacked Hayward's girlfriend) and the Board

12 of Prison Terms' successive, favorable discretionary decisions (the

13 Board twice had found Hayward suitable for parole).  Id.  No such

14 "unusual" or "extraordinary" circumstances attend the present case.

15

16     Nothing in Sass, Irons, Kunkler or Hayward alters this Court's

17 conclusion that a grant of habeas relief to Petitioner under the Biggs

18 dicta is not supported, much less compelled, by any "clearly

19 established" Supreme Court law.[5]  Section 2254(d)(1)'s reference to

20 "clearly established federal law" "refers to holdings, as opposed to

21

22 _____

23      [5]  One might conclude from Sass, Irons, Kunkler and
   Hayward that, except with respect to the extraordinary
24 circumstances found in Hayward, there does not exist any clearly
   established Ninth Circuit law in this area (much less any clearly
25 established Supreme Court law).  See Biggs v. Schwarzenegger,
   2007 WL 1140721, at *3-4 (discussing lack of guiding standards in
26 Sass and Irons); see also Kleve v. Kane, 2007 WL 879069, at
   *6 (N.D. Cal. Mar. 21, 2007) (noting that the Ninth Circuit has
27 not specified the number of denials or the length of time served
   beyond the minimum sentence that might trigger a Due Process
28 violation).

1   the dicta, of [Supreme Court] decisions." <u>Williams v. Taylor</u>, 529

2   U.S. 362, 365 (2000).  The statements from <u>Biggs</u> quoted above are the

3   dicta of a Court of Appeals, not the Supreme Court.  Indeed, in

4   <u>Culverson v. Davison</u>, 237 F.App'x 174 (9th Cir. June 8, 2007),

5   <u>petition for cert. filed</u>, (U.S. Feb. 12, 2008) (No. 07-9373), the

6   Ninth Circuit expressly ruled that "[t]here is no 'clearly established

7   federal law as determined by the Supreme Court of the United States'

8   that limits the number of times a parole board may deny parole to a

9   murderer based on the brutality and viciousness of the commitment

10  offense."  <u>Id.</u> at *1 (footnotes omitted).  The Court ruled that "[t]he

11  *dicta* in Ninth Circuit cases like [<u>Biggs</u>] are not holdings of the

12  Supreme Court, as required by <u>Carey v. Musladin</u>, 549 U.S. ____, at

13  *5-7 [127 S. Ct. 649] (2006), and <u>Shriro [sic] v. Landrigan</u>, ___ U.S.

14  ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127 S. Ct. 1933

15  (2007)]."  <u>Id.</u>; <u>see also</u> <u>Fernandez v. Kane</u>, 2006 WL 3041083, at *3

16  (N.D. Cal. Oct. 24, 2006) (<u>Biggs</u> dicta not clearly established federal

17  law as set forth by the Supreme Court).[6]

18  ///

19  ///

20  ///

21  ///

22

_____

23       [6]   Moreover, and in any event, the <u>Biggs</u> dicta would be
    inapplicable in Petitioner's case.  The BPH did not base its
24  decision solely on the gravity of Petitioner's commitment
    offense.  Under such circumstances, the BPH's decision did not
25  violate Due Process.  <u>See</u> <u>Rose v. Kane</u>, 2006 WL 3251735 *11 (N.D.
    Cal. Nov. 2, 2006) (<u>Biggs</u> dicta inapplicable where the BPH did
26  not base denial solely on gravity of commitment offense, but also
    relied on fact that petitioner needed more self-help and
27  therapy).

28

                                    16

1 | **VI.  Petitioner's Claim that the Denial of Parole Breached His Plea**

2 | **Agreement Does Not Merit Habeas Relief.**

3

4 | When a guilty plea rests in any significant degree on an

5 | agreement with the government, the agreement must be fulfilled.

6 | <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971); <u>Gunn v. Ignacio</u>, 263

7 | F.3d 965, 969 (9th Cir. 2001).  The party asserting breach bears the

8 | burden of proving the underlying facts establishing a breach.  <u>See</u>

9 | <u>United States v. Laday</u>, 56 F.3d 24, 26 (5th Cir. 1995); <u>United States</u>

10 | <u>v. Packwood</u>, 848 F.2d 1009, 1011 (9th Cir. 1988).  "Plea agreements

11 | are contractual in nature and are measured by contract law standards."

12 | <u>Brown v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003) (citation and

13 | quotations omitted).

14

15 | Petitioner apparently contends that, at the time he entered his

16 | plea, he expected that the parole authorities would set a parole date

17 | before now.  Petitioner's claim must be rejected.

18

19 | Petitioner received a sentence the maximum term of which was

20 | life.  Petitioner has not shown, and the record does not demonstrate,

21 | that the plea agreement included a promise by the State to release

22 | Petitioner on parole before now.  <u>See</u> <u>Smith v. Finn</u>, 2007 WL 214597,

23 | at *7 (E.D. Cal. Jan. 25, 2007) ("In the absence of an agreement that

24 | can be specifically enforced, the Board is not required to find

25 | petitioner eligible for parole upon completion of a minimum term.

26 | Rather, consideration of parole suitability remains within the sound

27 | discretion of the Board. (citations)."); <u>McCauley v. Brown</u>, 2006 WL

28 | 3020905, at *7 (N.D. Cal., Oct. 23, 2006) (Board's unsuitability

finding did not violate plea agreement where, at time of plea, petitioner admitted he understood that the maximum punishment was life imprisonment and that the issue of his release from custody "was a determination that people other than himself would make"); Chan v. Kane, 2006 WL 3020906, at *8 (N.D. Cal., Oct. 23, 2006) (Board's unsuitability finding did not violate plea agreement, where petitioner failed to demonstrate that Board's actions breached any particular term of plea agreement); In re Honesto, 130 Cal. App. 4th 81, 92, 29 Cal. Rptr. 3d 653 (2005) (where plea agreement contained no promise or representation that petitioner had a "right to parole" in accordance with the matrix of base terms, or that the Board would not consider the facts of the underlying offense in deciding whether petitioner was suitable for parole, Board did not violate plea agreement by deeming petitioner unsuitable for parole); In re DeLuna, 126 Cal. App. 4th 585, 599, 24 Cal. Rptr. 3d 643 (2004) (rejecting claim that plea agreement constrained prosecutor's arguments at hearing and prevented Board from denying suitability, where plea agreement did not contain any promise that petitioner would be released on parole at any specific time or that prosecutor would cease arguing on any given date that petitioner's commitment offense was especially callous); compare Brown v. Poole, 337 F.3d at 1159-62 (ordering specific performance of plea agreement where prosecutor made express promise that petitioner would serve only half of minimum term if she remained discipline free,

1  and petitioner fulfilled her side of the bargain).[7]

2

3      Petitioner's subjective expectations regarding his chance for

4  parole are irrelevant to the validity of the plea.  See Buckley v.

5  Terhune, 441 F.3d 688, 695 (9th Cir. 2006), cert. denied, 127 S. Ct.

6  2094 (2007) (in determining intent of parties with respect to plea

7  bargain, "the relevant intent is objective, . . . not a party's

8  subjective intent") (citations and quotations omitted); Calabrese v.

9  United States, 507 F.2d 259, 260 (1st Cir. 1974) (unless the defendant

10 affirmatively was misled by the prosecutor, or the court failed to

11 inquire sufficiently regarding the plea, the court "cannot look into

12 the subjective mental set of [the defendant] to see to what extent

13 misconceptions [regarding the sentence] played a part in his guilty

14 plea"); United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098

15 (2d Cir. 1972), cert. denied, 410 U.S. 945 (1973) ("subjective

16 mistaken impression" does not require withdrawal of plea; "to justify

17 the issuance of a federal writ vacating his guilty plea, the

18 petitioner must bear the burden of showing that the circumstances as

19 they existed at the time of the plea, judged by objective standards,

20 reasonably justified his mistaken impression") (emphasis added);

21 United States v. Collado-Gomez, 674 F. Supp. 426, 428 (E.D.N.Y. 1987),

22 aff'd, 854 F.2d 1315 (2d Cir. 1988) (defendant's subjective mistaken

23

24      [7]     At one point during the plea proceedings, the
25 prosecutor reportedly stated "that the maximum confinement time .
   . . is twenty-six years . . . You will not be receiving twenty-
26 six years, but your potential exposure is twenty-six years"
   (November 12, 1991 Reporter's Transcript appended to Reply at 6).
27 At other times during the plea proceedings, the maximum sentence
   is described as "life" (Id. at 2, 11).  Petitioner has served
28 less than twenty-six years.

                               19

1  belief "unsupported by any promise from the government or indications

2  from the Court is insufficient to invalidate a guilty plea"); see

3  generally 16A Fed. Proc. L. Ed. § 41:435 (2007) ("the applicant's

4  subjective belief as to the severity of the sentence, unsupported by

5  any promises from the government or indications from the court" cannot

6  support collateral relief) (footnote omitted).

7

8  **VII.  To the Extent Petitioner Challenges the Impartiality of the BPH,**

9       **the Challenge Must Be Rejected.**

10

11     Although the Petitioner's allegations are unclear, Petitioner may

12  contend that his BPH hearing panel predetermined the result of the

13  hearing and/or was less than impartial.  Any such allegation, is

14  unsupported by the record and must be rejected.

15

16     Although the record of the hearing may suggest that Petitioner

17  anticipated the hearing's outcome, nothing suggests that the panel

18  members themselves predetermined the outcome.  Courts presume that

19  administrative adjudicators act with honesty and integrity.  See

20  Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n, 426

21  U.S. 482, 496-97 (1976); Withrow v. Larkin, 421 U.S. 35, 47 (1975).

22  To overcome this presumption, a petitioner alleging bias "must show

23  that the adjudicator has prejudged or reasonably appears to have

24  prejudged, an issue." Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir.

25  1995) (internal quotations omitted).  A petitioner may make this

26  showing in two ways.  First, "the proceedings and surrounding

27  circumstances may demonstrate actual bias on the part of the

28  adjudicator." Id.  Second, a petitioner may show that "the

adjudicator's pecuniary or personal interest in the outcome of the proceedings . . . create[d] an appearance of partiality that violates due process. . . ." Id. Here, Petitioner has made neither showing. Therefore, Petitioner is not entitled to habeas relief on this claim.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:  February 21, 2008.

_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.